Marie M. FAISON

v.

Edward T. PARKER, et al.

Civ. A. No. 91–CV–5690.

United States District Court,
E.D. Pennsylvania.

Jan. 19, 1993.

Edward C. German, D. Selaine Belver, German, Gallagher & Murtagh, Philadelphia, PA, for plaintiff.

Marie M. Faison, pro se.

Lorray Brown, Deputy City Sol., Philadelphia, PA, for defendants Edward T. Parker, Peter Solomon, City of Philadelphia, Milkos Pogonyi and Philadelphia Dept. of Human Services.

## MEMORANDUM

DUBOIS, District Judge.

This action, brought pursuant to 42 U.S.C. § 1983, arises out of a presentence report that was ordered by the Honorable Russell M. Nigro of the Court of Common Pleas of Philadelphia County in connection with the sentencing of plaintiff, Marie M. Faison, on October 29, 1990.[1] The statements in the presentence report about which Ms. Faison complains are as follows: (1) she was diagnosed as having cervical cancer; (2) she tested positive for syphilis; (3) she tested positive for the HIV virus; (4) she was diagnosed as having a "severe character disorder—schizoid personality severe with strong paranoid trends"; and (5) she threatened the life of a caseworker while in Court concerning the foster care and custody of one of her children. In her Amended Complaint, Ms. Faison charged that disclosure of this information in the presentence report violated her constitutional and state protected right to privacy and constituted an intentional infliction of emotional distress. She also claimed that she was sentenced to an unreasonable period of confinement as a result of the inclusion of this information in the presentence report.

The defendants in this action are Edward T. Parker, the investigator with the Presen-

---

1. On August 14, 1990, Ms. Faison was convicted of Aggravated Assault, Possessing Instruments of Crime, and Recklessly Endangering Another Person in the Court of Common Pleas of Philadelphia County. On October 29, 1990, she was sentenced to not less than eight years nor more than twenty years on the Aggravated Assault charge, and concurrent sentences of not less than one year nor more than two years for both the Possessing Instruments of Crime and Recklessly Endangering Another person charges.

tencing Investigation Unit of the City of Philadelphia who prepared the presentence report for Judge Nigro; Peter Solomon, a probation officer with the Probation Department of the City of Philadelphia; Miklos Pogonyi, a caseworker with the Philadelphia Department of Human Services ("DHS"); the City of Philadelphia; and the Philadelphia Department of Human Services (hereinafter collectively referred to as "Defendants").

Presently before this Court is Defendants' Motion For Summary Judgment. For the reasons stated below, this Court will grant summary judgment in favor of Defendants.

## I. FACTUAL BACKGROUND

The presentence report submitted to the Honorable Russell M. Nigro disclosed that Ms. Faison (1) was diagnosed as having cervical cancer; (2) tested positive for syphilis; (3) tested positive for the HIV virus; (4) was diagnosed as having a "severe character disorder—schizoid personality severe with strong paranoid trends"; and (5) threatened the life of a caseworker in Court concerning the foster care and custody of her children.[2]

Based on Ms. Faison's admissions, it is undisputed that she was diagnosed as having cervical cancer and that she tested positive for syphilis. Ms. Faison disclosed this information to defendant Parker during the presentence investigation hearing on October 3, 1990; to defendant Solomon in February and July 1990; and to defendant Pogonyi. Based on her admissions and medical records, it is also undisputed that Ms. Faison did not test positive for the HIV virus. In her Amended Complaint, Ms. Faison contends that the mental health evaluation is "simply untrue," and that the allegation that she threatened the life of a case worker is a "malicious and

outrageous lie." Amended Complaint ¶¶ 19, 21.

## II. STANDARD OF REVIEW

■ Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court does not resolve questions of disputed fact, but simply decides whether there is a genuine issue of fact which must be resolved at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ In the instant case, both parties agree that the relevant facts are not in dispute. Indeed, in Ms. Faison's Memorandum of Law in Support of her Response to Defendants' Motion for Summary Judgment, she states "the facts, as stated in defendants' motion, are undisputed. What is in dispute is whether or not Marie M. Faison's constitutional right to privacy has been violated...." Plaintiff's Memorandum of Law in Support of her Response to Defendants' Motion for Summary Judgment at 1. However, in an alternative argument, Ms. Faison contends that summary judgment is not appropriate because there is a genuine issue of material fact as to whether the state measures taken to keep medical information confidential are satisfactory. This argument is without merit. There is no factual dispute as to what state statutes and rules safeguard against disclosure of the confidential information contained in the Presentence Report. What is in dispute is the legal adequacy of these

---

**2.** The presentence report stated:
[Marie Faison] states that during her current incarceration it was revealed that she has both cervical cancer and syphilis. According to probation and the Department of Human Services records [Marie Faison] reportedly tested positive for the HIV virus during this incarceration.
According to a prior Mental Health Evaluation prepared on [Marie Faison] she was diagnosed as "in view of this woman's past history, present interview and psychological testing. [sic]

This woman can best be diagnosed as having a severe character disorder—schizoid personality severe with strong paranoid trends".... Presentence Report at 2–3.
The report also stated "[i]t should also be noted that [Marie Faison's] violent nature was also shown during her dealing with the Department of Human Services. She reportedly threatened the life of a Case Worker while in Court concerning the foster care and custody of one of her children...." Presentence Report at 4.

safeguards, which is a question of law for the Court. See *infra* at pages 1203–05.

The Court concludes that the dispositive facts are not in dispute. Summary judgment is, therefore, appropriate.

## III. PLAINTIFF'S CONSTITUTIONAL RIGHT TO PRIVACY WAS NOT VIOLATED

### A. *Federal Constitutional Right*

The Supreme Court has recognized a constitutionally protected privacy interest in two areas: (1) the individual interest in avoiding disclosure of personal matters and (2) the interest in independence in making certain kinds of important decisions. *Whalen v. Roe*, 429 U.S. 589, 699, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). In *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir.1980), the Third Circuit held that medical records are protected from disclosure by the first of these interests, the confidentiality branch of the right to privacy. Medical records, the Third Circuit stated, which "may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection. Information about one's body and state of health is a matter which the individual is ordinarily entitled to retain within the 'private enclave where he may lead a private life'." *Id.* (quoting *United States v. Grunewald*, 233 F.2d 556, 581–82 (2d Cir.1956) (Frank, J., dissenting), *rev'd* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957)) (citations omitted); *see also In re Search Warrant (Sealed)*, 810 F.2d 67, 71 (3d Cir.1987) ("medical records are clearly within this constitutionally protected sphere").

The Third Circuit recognized, however, that the privacy right in nondisclosure of confidential medical information is far from absolute, and "even material which is subject to protection must be produced or disclosed upon a showing of proper governmental interest." *Westinghouse*, 638 F.2d at 577; *see also Whalen*, 429 U.S. at 699, 97 S.Ct. at 876; *Plowman v. U.S. Dep't of Army*, 698 F.Supp. 627, 634 (E.D.Va.1988) (privacy right of this nature not absolute or unqualified). The *Westinghouse* court held that governmental intrusion into medical records is permitted only after balancing the interests of the individual and society, and determining that the societal interest in disclosure outweighs the individual's privacy interest on the specific facts of the case. *Westinghouse*, 638 F.2d at 578. *See also Fraternal Order of Police, Lodge No. 5 v. Philadelphia*, 812 F.2d 105, 110–11 (3d Cir.1987).

In describing the balancing test, the *Westinghouse* court stated that the factors to be considered in deciding whether an intrusion into an individual's privacy is justified include: (1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generate; (5) the adequacy of the safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access. *Westinghouse*, 638 F.2d at 578.

▪ In the instant case, Ms. Faison has a privacy right in the nondisclosure of her medical and mental health information.[3] Indeed, the type of medical and mental health information contained in the presentence report—information concerning Ms. Faison's mental health and HIV status—is deserving

---

[3]. The fact that Ms. Faison disclosed to defendants Parker, Solomon, and Pogonyi that she was diagnosed as having cervical cancer and tested positive for syphilis before this information was included in the presentence report does not affect the inquiry as to whether her constitutional right to privacy was violated. Although *Whalen* and *Westinghouse* did not address the duty of the government to protect medical information once such confidential information is disclosed to the government, lower courts have held that once the government has confidential information it has an obligation to avoid disclosure of the information. In *Carter v. Broadlawns Medical Center*, 667 F.Supp. 1269, 1282 (S.D.Iowa 1987), *cert. denied*, 489 U.S. 1096, 109 S.Ct. 1569, 103 L.Ed.2d 935 (1989), for example, the court held that a public hospital had violated plaintiffs' constitutional rights by giving chaplains open access to patient medical records without patient authorization. The court noted that the hospital did not properly respect patients' confidentiality and privacy as recognized in *Whalen*.

of a high degree of protection.[4] In *O'Donnell v. United States*, 891 F.2d 1079, 1086 (3d Cir.1989), the Third Circuit held that given the sensitive nature of psychiatric information "great care must be taken to maintain the confidentiality of psychiatric records." *See also Ms. B. v. Montgomery County Emergency Serv., Inc.*, 799 F.Supp. 534, 537 (E.D.Pa.1991); *In re "B."*, 482 Pa. 471, 485, 394 A.2d 419, 426 (1978). Similarly, in *Doe v. Barrington*, 729 F.Supp. 376, 384 (D.N.J. 1990), the court held that "the privacy interest in one's exposure to the AIDS virus is even greater than one's privacy interest in ordinary medical records because of the stigma that attaches with the disease." *But see Plowman*, 698 F.Supp. at 632 (holding that the privacy interest in the nondisclosure of one's HIV status is no greater than the privacy interest in the nondisclosure of other medical information).

■ Notwithstanding the sensitive nature of the medical and mental health information contained in the presentence report, the Court must weigh the state's interest in disclosing this information in order to determine whether Ms. Faison's constitutional right to privacy was violated. The Court concludes that given the public interest in access, the degree of need for access, and the state safeguards against unauthorized disclosure, Ms. Faison's constitutional right to privacy in the nondisclosure of her medical and mental health records was not· violated.

### 1. Public Interest in, and Degree of Need for, Disclosure

The state has a compelling interest in, and need for, the inclusion of private medical and mental health information in the presentence report. Such information guides the sentencing court in determining an appropriate facility in which to incarcerate Ms. Faison,

and enables the prison system to provide Ms. Faison with necessary medical and psychiatric attention.

The deposition testimony of defendant Solomon highlights the state's compelling need to have such information contained in the presentence report:

> The court needs to know those things as it makes plans for disposition of an open matter. If the court is considering a community based sentence, they [sic] would want to consider any issues that that report might raise for special conditions of probation because the court has a lot of options in creating a treatment plan, if you will, for that individual while they are under the court supervision.
>
> And if there are issues of relevance, the prison needs to know if they are considering an incarceration whether that's in a correctional facility, or sometimes, the case may be disposed of in a mental health facility. They have been known to commit people as part of the criminal disposition. The institution may need to know some of these factors.
>
> Prisons, for example, will need to know things for making a classification. If there are health problems to be managed, they are going to have to have that information as well. It gives prison staff and institutional staff a place to start.

Deposition Transcript of Peter Solomon at 28–29.

The Department of Human Services also needs information concerning Ms. Faison's medical and mental health status in order to plan her childrens' foster care. If Ms. Faison tested positive for the HIV virus, the DHS would have had her children tested for the virus. Similarly, information concerning Ms. Faison's mental health assists DHS in determining the type of services to provide to

---

4. Defendants argue that because Ms. Faison did not, in fact, test positive for the HIV virus, she does not have a privacy interest in the nondisclosure of her testing positive for the HIV virus. Defendants cite no cases·in support of this position.

Ms. Faison stated in her Amended Complaint that the information in the Presentence Report disclosing that she tested positive for HIV was incorrect, but she did not assert a claim based on

that mistake. Rather, as explained above, Ms. Faison charged that disclosure of confidential medical information, including her HIV status, violated her right to privacy and constituted an intentional infliction of emotional distress.

The Court concludes that Ms. Faison has a constitutionally protected interest in the nondisclosure of confidential medical information concerning her HIV status. *See Doe v. Barrington*, 729 F.Supp. 376 (D.N.J.1990).

Ms. Faison and her children to facilitate reunification. The deposition testimony of defendant Pogonyi is instructive on this point:

Q. Now, why would information that you received about the parents be helpful in your planning and providing services to the children in the family?

A. Well, with regard to her mental health especially, her children had been removed from the home due to risk factors in the home to the children. So before returning them, we would have to know to what extent those risk factors had been alleviated. And certainly the mother's mental health would be one of those factors that we would have to know about.

Q. Why would the medical condition be important or relevant to you in your planning and providing services to the children?

A. Well, in that case, it would not be so much relevant to the safety of the children in those home. It would be more relevant, especially in a case of HIV, to the health of the child already in placement.

Q. Would that assist you in making a determination as to appropriate placement for the children?

A. Yes, it would.

Deposition Transcript of Miklos Pogonyi at 33–34.

**2. State Safeguards Against Disclosure**

In addition to the state interest in, and need for, inclusion of confidential medical and mental health information in the presentence report, state statutes and rules concerning the confidentiality of presentence reports adequately safeguard against the disclosure to the general public of the private medical information contained in the report. Protective safeguards are provided by state statute, 42 Pa.Cons.Stat.Ann. § 9733, which states in relevant part:

The presentence report shall not be a public record. It shall be available only to the following persons or agencies under the conditions stated:

(1) The report shall be available to the court for the purpose of assisting it in determining the sentence.

(2) the report shall be available on court order to persons or agencies having a legitimate professional interest in the information likely to be contained in the report, as, for example:

(i) A physician or psychiatrist appointed to assist the court in sentencing.

(ii) An examining facility.

(iii) A correctional institution except that no court order is necessary under section 9759(c) (relating to documents transmitted to prison and parole authorities).

(iv) A department of probation or parole except that no court order is necessary under section 9759(c)....

42 Pa.Cons.Stat.Ann. § 9733 (Purdon 1982 & Supp.1991).

Similarly, Pennsylvania Rule of Criminal Procedure 1404(a) provides that presentence reports are confidential and not part of the public record. The rule states:

All pre-sentence reports and related psychiatric and psychological reports *shall be confidential, and not of public record.* They shall be available to the sentencing judge, and to:

(1) an examining professional or facility appointed to assist the court in sentencing, unless the sentencing judge otherwise orders;

(2) the attorney for the Commonwealth and counsel for the defendant, for inspection and copying, unless the sentencing judge orders that they be available for inspection only.

Pa.R.Crim.P. 1404(a) (1992) (emphasis added).[5]

The deposition testimony of defendant Parker, the probation officer who prepared

---

**5.** The medical and mental health information obtained by Miklos Pogonyi, the Department of Human Services social worker, and placed in the DHS record, is similarly confidential. Pursuant to the Child Protective Services Act, 23 Pa.Cons. Stat.Ann. § 6339, any information obtained and maintained by a county children and youth social service agency is confidential. Because Ms. Faison did not assert in her Amended Complaint that her right to privacy was violated by inclusion of confidential information in the DHS record that issue is not before the Court.

Ms. Faison's presentence report, establishes that these safeguards were provided in the instant case. Parker testified as follows: "

Q. Well, who did you report the information to? And I mean the information of [Ms. Faison] being HIV positive?

A. The information I did not report to anyone. I put it directly into my report at the time it came to prepare my report.

Q. What report is that?

A. The presentence investigation.

Q. And who receives the presentencing investigation?

A. In this particular case, Judge Russell Nigro.

Q. Is that a public document?

A. No, it's not. The presentence report is prepared by our department and is forwarded to the judge—the sentencing judge with enough copies for him to distribute to attorneys on both sides.

And also a copy that would accompany the person, if they are incarcerated where the Parole Board would be able to review it. So they could help in the place of the person.

The judge has the option of whether or not to even distribute it to the other attorneys. He can hold on to the report himself and just have his own copy and that would be it.

A copy is also placed in the Probation Department files.

Q. Do you know, in this instance, whether it was distributed to the other attorneys.

A. I do not know. But I'm assuming, based on the fact that we are all sitting here, that it was.

Q. So as far as you know, that report is confidential?

A. That report goes to the judge and then it remains with the judge. It does not go to [Quarter] Session's files, which would be public record. It does not go anywhere. It remains in the probation files. in the judges files, personal files, and in the prison system. And that's it. And, well, the attorney. Both the district attorney and, in this case, I believe, it was the public defender's office.

And because of confidentiality between lawyer and client, I do not believe that the public defender would release it publicly.

So, I know for a fact, that they are not to be public record. They are not read into the court record at any point. In any court or sentencing procedure, the presentence is not read into the record, which is public.

In fact, the reports, when they are [sic] leave our office, are all stamped confidential in bold letters at the bottom.

Deposition Transcript of Edward T. Parker at 16–18.

Ms. Faison argues in her Memorandum of Law in Support of her Response to Defendants' Motion for Summary Judgment that these state safeguards are inadequate because they provide only that the presentence report is not a public record. Ms. Faison also contends that because the presentence report is kept in numerous files, including court, probation, prison, and attorney files, and is not secured in locked vaults or cabinets, the state safeguards are inadequate. She relies on *Whalen* and *Westinghouse* in support of her position. This argument is unpersuasive.

The safeguards deemed adequate by the Supreme Court in *Whalen* and the Third Circuit in *Westinghouse,* which included storage of materials in vaults and locked cabinets, are not standards which must be used in all cases, but rather are procedures that courts may consider in determining the sufficiency of the safeguards against disclosure of confidential information at issue in those cases. While both the Supreme Court and the Third Circuit considered the maintenance of medical records in locked cabinets in their assessment of the adequacy of safeguards against disclosure of confidential information, neither court held that such safeguards were required in all cases. Notably, both the Supreme Court in *Whalen* and the Third Circuit in *Westinghouse* relied on the fact, present in this case, that public disclosure of the confidential medical information was expressly prohibited. *See Whalen,* 429 U.S. at 595, 97 S.Ct. at 873; *Westinghouse,* 638 F.2d at 580.

The Court concludes that the safeguards provided by 42 Pa.Cons.Stat.Ann. § 9733 and P.R.Crim.Pro. 1404(a) adequately protect against unauthorized disclosure of confidential information concerning Ms. Faison's medical and mental health status which was contained in the presentence report. The fact that this information is maintained in court, probation, prison, and attorney files, and may not be in locked cabinets, does not render the safeguards inadequate. *See Littlejohn v. Prism Integrated Sanitation Management,* 1992 WL 202146, 1992 U.S.Dist. LEXIS 11534 (E.D.Pa.1992) (relying on the safeguards of state statutes concerning the disclosure of medical and psychological information in presentence reports).

### 3. Conclusion

In sum, the Court concludes that Ms. Faison's constitutional right to privacy in the nondisclosure of her medical records was not violated because the state's interest in inclusion of this information in the presentence report outweighs the privacy interest involved. The state has a compelling interest in providing the sentencing court, the prison system, and the child welfare system with information concerning Ms. Faison's medical and mental health status, and state safeguards adequately protect against the disclosure to the general public of the private medical information.

### B. *State Constitutional Right*

The Supreme Court of Pennsylvania has recognized the same two privacy interests under the Pennsylvania Constitution that the Supreme Court recognized in *Whalen,* that is the individual's interest in avoiding disclosure of personal matters and the interest in independence in making certain kinds of important decisions. *See In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 149, 415 A.2d 73, 77 (1980). The Supreme Court of Pennsylvania held that the privacy interest in nondisclosure of personal matters was implicated where a state grand jury sought the production of hospital records. *Id.*

■ The right to privacy under the Pennsylvania Constitution is not, however, absolute. In *Denoncourt v. Commonwealth,* *State Ethics Comm'n,* 504 Pa. 191, 198, 470 A.2d 945, 948 (1983), the Pennsylvania Supreme Court held that "not every intrusion into an individual's privacy is impermissible." Rather, the individual's right to privacy must be balanced against the state's interest in disclosure. In *Stenger v. Lehigh Valley Hosp. Center,* 386 Pa.Super. 574, 580, 563 A.2d 531, 534 (1989), which involved the disclosure of information related to blood products, the court adopted the balancing test set forth in *Westinghouse* in order to determine when an intrusion into an individual's right to privacy is justified under the Pennsylvania Constitution. Because the constitutional analysis is the same under the Pennsylvania Constitution as it is under the federal Constitution, the Court concludes that Ms. Faison's right to privacy under the Pennsylvania Constitution was not violated for the same reasons that her right to privacy was not violated under the federal Constitution.

### IV. PLAINTIFF'S COMMON LAW RIGHT OF PRIVACY WAS NOT VIOLATED

In *Vogel v. W.T. Grant Co.,* 458 Pa. 124, 130, 327 A.2d 133, 136 (1974), the Pennsylvania Supreme Court enumerated four categories of invasion of privacy that are derived from the Restatement Second of Torts: (1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and (4) publicity placing persons in false light. Disclosure of confidential medical records implicates the third of these categories, the publicity given to private life.

■ The elements of this tort are: (1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person and (4) is not of legitimate concern to the public. *Harris v. Easton Publishing Co.,* 335 Pa.Super. 141, 154, 483 A.2d 1377, 1384 (1984). In *Harris* the court held "the element of 'publicity' requires that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (citations omitted).

■ In her Memorandum of Law in Support of her Response to Defendants' Motion for Summary Judgment, Ms. Faison contends that she can maintain a cause of action for common law invasion of privacy because publicity was given to her private life by disclosure of medical and mental health information in the presentence report. She argues she satisfies the "publicity" requirement because the presentence report is contained in numerous files, and was typed in a typing pool. She states "simply marking the records 'confidential' and having a statute which states the records are not open to the public is not conclusive evidence that the report does not meet the 'publicity' requirement." Plaintiff's Memorandum of Law in Support of her Response to Defendants' Motion for Summary Judgment at 9. This argument is unpersuasive.

Ms. Faison cannot maintain a cause of action for common law invasion of privacy. There has been no disclosure to the general public of the medical and mental health information contained in the presentence report, and Ms. Faison has not offered any evidence to the contrary. Indeed, state statutes safeguard against precisely such disclosure. Moreover, the fact that the presentence report was typed in a typing pool and is contained in court, probation, prison, and attorney files does not satisfy publicity requirement as defined in *Harris. See also Vogel,* 327 A.2d at 137 (disclosure of private information to four persons does not constitute publicity for purposes of common law invasion of privacy).

## V. PLAINTIFF CANNOT MAINTAIN A CLAIM UNDER INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### A. *Pennsylvania Law*

The Pennsylvania Supreme Court has not explicitly recognized the tort of intentional infliction of emotional distress. *See Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988 (1987). In *Williams v. Guzzardi,* 875 F.2d 46, 50–51 (3d Cir.1989), however, the Third Circuit, considering the Pennsylvania Supreme Court's decision in *Kazatsky,* predicted that the Pennsylvania Supreme Court will impose liability for intentional infliction of emotional distress in appropriate cases. *See also Silver v. Mendel,* 894 F.2d 598 (3d Cir.1990).

■ Construing *Kazatsky,* the Third Circuit outlined the four elements of the tort: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) the conduct must cause emotional distress; and (4) the distress must be severe. *Williams,* 875 F.2d at 52. For conduct to be "outrageous" it must be extreme and very offensive to the moral values of society. *Id.; Silver,* 894 F.2d at 606.

The Third Circuit also held that under *Kazatsky* a claim for intentional infliction of emotional distress must be proved by expert medical testimony. "We construe *Kazatsky* as limiting the scope of liability by requiring competent medical evidence of causation and severity. It does not alter a plaintiff's burden to prove that the conduct was both intentional and outrageous." *Id.; see also Kazatsky,* 527 A.2d at 989 ("existence of the alleged emotional distress must be supported by competent medical evidence").

■ In the instant case, Ms. Faison cannot maintain a cause of action for intentional infliction of emotional distress. Defendants conduct—disclosing private medical information in the presentence report—was not extreme or outrageous. To the contrary, it was entirely appropriate. The information assists the sentencing court, the prison system and the child welfare system in providing appropriate care to Ms. Faison and her family. Moreover, the information contained in the presentence report is not disclosed to the general public. In addition, Ms. Faison has not offered *any* expert medical testimony in support of her claim that the inclusion of confidential medical and mental health information in the presentence report caused severe emotional distress. Nor has an expert witness been identified to testify on this issue.

### B. *Federal Law*

■ The Supreme Court has established that mental or emotional distress constitutes a compensable injury under 42 U.S.C.

§ 1983, but that damages may be awarded only upon a showing that such injury actually occurred. *Carey v. Piphus,* 435 U.S. 247, 263–64, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). The level of damages awarded under section 1983 is "ordinarily determined according to principles derived from the common law of torts." *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 306, 106 S.Ct. 2537, 2542, 91 L.Ed.2d 249 (1986). Thus, Ms. Faison cannot maintain a cause of action for intentional infliction of emotional distress under section 1983 for the same reasons, discussed above, that she can not maintain such an action under state law.

## VI. CONCLUSION

Summary judgment will be granted in favor of Defendants, Edward T. Parker, Peter Solomon, Miklos Pogonyi, the City of Philadelphia, and the Philadelphia Department of Human Services. Ms. Faison's federal and state protected right to privacy was not violated. Ms. Faison cannot maintain a cause of action for intentional infliction of emotional distress under either Pennsylvania law or 42 U.S.C. § 1983.