STATE of Missouri, ex rel. Richard G. CALLAHAN, Prosecuting Attorney of Cole County, Missouri, Relator,

v.

The Honorable Byron L. KINDER and The Honorable James F. McHenry, Circuit Judges for the Nineteenth Judicial Circuit, and the Missouri Department of Corrections, Respondents.

No. WD 48991.

Missouri Court of Appeals, Western District.

May 24, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1994.

Richard G. Callahan, Pros. Atty., Cole County, Jefferson City, for relator.

Alex Bartlett, Barbara L. Miltenberger, Husch & Eppenberger, Jefferson City, for Byron L. Kinder and James F. McHenry.

Judy P. Draper, Gen. Counsel, Karolin Solorzano, Dept. Gen. Counsel, Mo. Dept. of Corrections, Jefferson City, for Missouri Dept. of Corrections.

Before LOWENSTEIN, P.J., and BERREY and ELLIS, JJ.

ORIGINAL PROCEEDING IN PROHIBITION AND MANDAMUS

LOWENSTEIN, Presiding Judge.

The issue presented in this case involving alternative requests for extraordinary relief in mandamus, **Rule 94,** and prohibition, **Rule 97,** is as follows: May a local court rule require a corrections facility to produce an inmate's medical records as they relate to

AIDS and HIV virus, tuberculosis or hepatitis to the court for *in camera* inspection prior to any court appearance by the prisoner?

The Cole County Prosecuting Attorney petitioned this court for extraordinary relief to settle an impasse created when the judges of that circuit, on December 1, 1993, adopted the following Local Rule (Rule):

"In the Matter of:

"Transportation of Inmates to Cole County Courthouse:

"WHEREAS, it being within the knowledge of this court that certain inmates of the Department of Corrections are infected with hepatitis, tuberculosis and/or suffering from AIDS or HIV virus, or some combination of the above, and

"WHEREAS, it is the responsibility of this court to see to the well-being of those who serve the court as well as the general public, it is

"ORDERED, ADJUDGED AND DECREED that before any prisoner shall be brought from a custodial institution of this state to the courthouse located in Cole County, Missouri, for any purpose whatsoever, the superintendent of the *custodial institution* will furnish this court, *in camera*, medical records concerning that prisoner for any infectious disease of whatever nature that his medical record will indicate, in advance of his appearance. Failing to do so, the prisoner will be denied access to this court."

In response, and in refusing to supply the medical information, Corrections Director, Dora Schriro, and her deputy wrote to the court stating statutory and constitutional considerations made inmates' medical records in general, and particularly as to AIDS, confidential and closed even to a court's *in camera* inspection. Corrections advised the court of its policy of quarantining in its facility an inmate suffering from tuberculosis (TB), and that the individual would not be transferred without precautions and notice to an outside agency. In order to break the impasse, the prosecutor filed for this writ for alternative relief against the respondents, Judge Kinder and Judge McHenry (Judges), to prohibit enforcement of the Rule and,

ultimately against the Missouri Department of Corrections (Corrections), in mandamus to comply with the Rule so that he could proceed with the prosecution of twenty-one inmates without facing the possibility of dismissal on the grounds of speedy trial violations. *See e.g., People v. Juan R.*, 153 Misc.2d 400, 589 N.Y.S.2d. 256 (Sup.1992).

This court issued its preliminary order prohibiting Judges from enforcing the Rule requiring prisoner medical records on hepatitis and TB, but, in a preliminary order of mandamus, required Corrections to provide the pertinent inmate records as to AIDS and the HIV virus. The court this day makes absolute the preliminary order relating to hepatitis and TB, quashes the preliminary order in mandamus as against Corrections on AIDS and HIV, and enters a final order prohibiting implementation of the Rule as to records relating to these diseases.

■ Before discussing the main issue, the Judges' contention that Corrections lacks standing to question the Rule is first addressed: 1) Although they are in adversarial roles in this writ action, the Judges and Corrections are both respondents. Corrections did not bring this action, therefore, its "standing to sue" is not an issue; 2) even if Corrections had brought this action, the Rule at issue requires Corrections to provide the pertinent medical records, which would provide it standing as custodian of medical records to protect those records from an unjustified intrusion. *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 574 (3rd Cir.1980); *See Mann v. University of Cincinnati v. Jones*, 824 F.Supp. 1190, 1199 (S.D.Ohio 1993); 3) this allegation confuses the concepts of standing and indispensable parties. *State ex. rel. Twenty–Second Judicial Circuit*, 823 S.W.2d 471, 474–75 (Mo. banc 1992). "Standing to sue is an interest in the subject matter of the suit which, if valid, gives that person a right to relief." *Id.* at 475. Such is the interest of Corrections in the case at bar. It is also noted the "threshold requirement for standing is extremely low where mandamus is brought to enforce a nondiscretionary duty allegedly required of a public official. Even the slightest interest is sufficient to support standing to bring man-

damus in such circumstances." *Id.* It is ruled Corrections does have standing to assert a denial of providing inmates' medical records.

■ The reasons given for promulgation of the Rule are now summarized:

1. "To assure that proper precautions are taken with particular inmates who have communicable diseases", "in order to protect the well being of court personnel as well as the general public", because "a large number of inmates of ... [Corrections] are infected with infectious hepatitis, tuberculosis and/or are suffering from AIDS or the HIV virus."

2. Without such information, there is a danger to employees and the public. By receiving advance notice of prisoners with these diseases, "adequate precautions can be taken." These precautions would include having additional bailiffs and increasing ventilation in the courtroom.

3. In a letter to Corrections, the Judges said: "... we have had physical altercations here in the recent past which have involved injury with ensuing loss of blood, and perhaps exchange of blood between bailiffs and inmates. Our concern is also for defense counsel...." "As you are aware, inmates are brought to court pursuant to the court's issuing a writ of habeas corpus ad prosequendum. Concern was also expressed as to the welfare of jury venires, witnesses and the general public. The purpose of the above order is to advise Corrections that all requests for such writs will be denied unless the necessary medical information is received." The Judges have reported knowledge of several public defenders who have recently been diagnosed with TB.

Although the Rule at issue appears to be worded so that any county jail or state correctional facility would be subject to supplying the inmate's medical records, this opinion will address implications only as to our state system; however, the effect of the Order in Prohibition entered this day will be applicable to any local or other facility as well as Corrections. Likewise, the Rule would read so as to require a facility housing an inmate appearing in Cole County Circuit Court to divulge to the court *any* infectious disease, which could include diseases other than those specifically enumerated. Again, despite the more far-reaching scope of the Rule, this opinion will only cover HIV, AIDS, TB and hepatitis, with primary focus on HIV and AIDS records. Early on, Corrections advised the Judges that inmates with active TB, were, under existing department policy, being quarantined obviating any need for the Rule. No reason has been advanced for requiring medical information about hepatitis, so no analysis will be given for making absolute the prohibition as to these medical records. Therefore, since the focus of this Rule appears to be about HIV and AIDS, and the parties' arguments before this court are almost exclusively about that disease, this opinion will deal with HIV and AIDS records.

AIDS is a viral disease which weakens and then destroys the body's immune system; it is caused by the Human Immunodeficiency Virus which attacks the T-lymphocyte cells, which are part of the body's immune system. *Doe v. Barrington*, 729 F.Supp. 376, 380 (D.N.J.1990). The infectious diseases which attack the body occur due to a lack of immunity (i.e., pneumonia), frequently lead to death. *Id.* AIDS consists of the HIV virus, plus one or more infectious or "opportunistic" diseases which the body has been unable to ward off. *Estate of Behringer v. Princeton Med. Ctr.*, 592 A.2d 1251, 1267. The "incubation period between HIV infection and AIDS may range from a period of months to several years." *Id.* at 1267. HIV is transmitted through contact with contaminated blood, semen, or vaginal fluids, *Doe*, 729 F.Supp. at 380, as well as by an injection from a needle which breaks the skin. *Behringer*, 592 A.2d at 1267; *Harris v. Thigpen*, 941 F.2d 1495, 1503 (11th Cir.1991). The public's perception of HIV–AIDS is that it is contracted by homosexual activity and intravenous drug use. The disclosure of an individual's HIV status is a greater intrusion than disclosure of most other medical information because "the public considers the virus to be highly communicable ... and is associated with lifestyles of homosexuality, sexual promiscuity and drug use." Loeb, *Protecting the Right to Informational Privacy for HIV–Positive Prisoners*, 27 Col.J.L. & Soc.Probs. 269, 271–

272 (1993). "... the privacy interest in one's exposure to the AIDS virus is even greater than one's privacy interest in ordinary medical records because of the stigma that attaches with the disease." *Doe v. Barrington,* 729 F.Supp. at 384; *Doe v. Plymouth,* 825 F.Supp. 1102, 1107 (D.C.Mass.1993). "Although HIV has been detected in other bodily fluids such as saliva and urine, the virus is much less concentrated in those fluids, and there are no known cases of transmissions by such means. The Centers for Disease Control terms the risk of infection from such fluids as 'extremely low or nonexistent'." *Barrington,* 729 F.Supp. at 380. The court in *Barrington* further noted that in 1986 the Surgeon General announced, and was supported by later evidence, HIV is not transmitted by casual contact with an infected person by touching or kissing. *Id.* at 381. Although it is documented that the incidence of HIV and TB are substantially higher in correctional institutions than found in the public at large, an examination of both the Missouri statutes and the common law on the right of privacy as to medical records and medical information, leads to the conclusion the Rule may not stand.

## STATUTORY LAW

Section 217.075, RSMo.Cum.Supp.1993 provides no support for the Rule. This section is located in a chapter relating to the Department of Corrections and reads, in pertinent part:

·  1.  All offender records ... shall be designated public records ... "except:

(1) Any information, report, record or other document pertaining to an offender's personal *medical history,* which shall be a *closed record* ...

4.  No department employee shall have access to any material closed by this section unless such access is necessary for the employee to carry out his duties...." (emphasis added).

The statute goes on to allow Corrections to determine "what department employees or other persons shall have access to closed records and the procedures needed to maintain the confidentiality of such closed records." Corrections has advised this court that Corrections officers are not advised which inmates have the HIV virus.

Section 610.120, RSMo.Cum.Supp.1993, provides no support for the Rule. It relates to prior *arrest* records which shall be available to courts and other agencies.

Sections 191.650–.698, RSMo.Cum.Supp. 1993, cover Acquired Immune Deficiency Syndrome (AIDS), within a chapter dealing with Public Health and Welfare. § 191.656.1 specifically states:

"(1) All information ... and records ... held ... by any department ... concerning an individual's *HIV infection status* or the results of any individual's HIV testing *shall be strictly confidential* and shall not be disclosed except to: (a) Public employees within the ... department ... who need to know to perform their public duties; (b) Public employees from other ... departments ... who need to know to perform their public duties; ..." (emphasis added).

The language of § 191.656 is plain and clear. Despite a higher incidence of HIV in the Missouri State Penitentiary population, but because of the very limited means of transmittal of the HIV virus, and the type of contact between court personnel and inmates, this Rule cannot stand. The statutory language of "strictly confidential," coupled with the limited number of applicable statutory exceptions,[1] plus the lack of showing of the inability of Court personnel to use universal precautions, provides a basis for the Rule as to its application to HIV prisoner-litigants. As noted in an article entitled *AIDS in Prison The Federal Experience,* by Ouinlan and Moritsugu, printed in the Judges' Journal Vol 26, and noted at page 29, the director and assistant director of the Federal Bureau of Prisons state, "Confidentiality is a critical adjunct to a prison-based HIV-testing program ... [T]here are few

---

1.  **Section 191.659,** allows HIV testing for individuals received into and before discharge from the corrections system; and § **191.662,** allows testing by the department of mental health for certain individuals involved in methadone treatment for intravenous drug abuse (disclosure to the victim of a sexual offense where sexual intercourse is involved, §§ **191.656.2(1)(g)** and **191.-663).**

valid reasons for individuals other than medical staff to be familiar with test results ... [F]indings are limited to managers and medical personnel with a clear need to know. This approach to confidentiality is ... linked to the philosophy that staff and inmate safety are best achieved through ... 'universal precautions' against contact with blood and bodily fluids" and all prison personnel [should] ... "operate on the assumption that every inmate may be HIV-positive...."

Even if it were shown court personnel in the performance of public duties required knowledge of which litigants were infected, it would be impossible to conduct court without disclosing, to all in the courtroom, as well as to the general public, which prisoners had AIDS or were infected with the HIV virus. Missouri's legislature has spoken, and the laws applicable to HIV and AIDs are quite clear—these records are private, confidential and can be discussed only in very limited circumstances, none of which have been shown in this case.

## COURT INTERPRETATION OF MEDICAL PRIVILEGE

The following discussion of the case law in analyzing the Rule at hand is somewhat attenuated due to the unusual facts in the present writ case. This Rule and necessarily the issue presented in the first paragraph of this opinion involves a *court* rule and the constitutional rights of privacy in medical records of prisoners. The case law to be examined starts with prisoner rights in general, and later cases examine issues of rules made to run a prison, rather than the confidentiality of medical records and, finally, what governs the case of HIV medical information. This case is the first in Missouri regarding the limits to which a local court rule may extend as to requiring HIV information prior to a court appearance.

At the outset, the Supreme Court of the United States has proclaimed a constitutionally protected privacy interest of an individual in avoiding the disclosure of personal matters. *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). An examination of court-made law interpreting constitutional rights of prisoners as to their medical records, begins with a case in which the Supreme Court looked at Missouri's correctional regulations on inmate-to-inmate correspondence and the marriage of persons who are incarcerated. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), recognized prisoners retain constitutional rights not inconsistent with their status as a prisoner, and penal systems are accorded judicial deference in promulgating regulations which are "reasonably related to legitimate penological interests." *Id.* at 89, 94, 107 S.Ct. at 2261, 2264. In determining whether prison rules are reasonable, these factors are considered: 1) a rational connection between the rule and a legitimate and neutral government interest justifying the rule; 2) whether there are other ways of "exercising the right that remain open to ... inmates;" 3) the impact for individual prisoner rights on other inmates and "allocation of prison resources;" and 4) whether the rule is an "exaggerated response" to prison concerns. *Id.* at 89–90, 107 S.Ct. at 2261–2262. In applying those factors, the Court upheld the ban on inmate-to-inmate correspondence and struck down the prohibition against marriages.

Acknowledgement of an inmate's constitutional rights of access to the courts continues. *Casey v. Lewis,* 4 F.3rd 1516, 1518, 1520 (9th Cir.1993). *Turner* and *Casey* did not consider privacy rights in medical records, but involved court examination of prison rules on matters such as visitation. In any event, the Rule in the case at bar still could not be upheld. There is no hint criminal courtroom activity, present or past, presents any danger resulting from an inmate who is HIV positive. Use of universal precautions such as wearing rubber gloves to clean blood spills, presents a reasonable alternative to the Rule.

*Faison v. Parker,* 823 F.Supp. 1198 (E.D.Pa.1993), as pertinent here, involved an inclusion of the plaintiff's presentence report that she tested positive for the HIV virus. The judge wrote that medical records containing personal facts and information about a person's health is ordinarily entitled to the privacy right of nondisclosure. *Id.* at 1201. "... HIV status—is deserving of a high degree of protection." *Id.* at 1201–02. The opinion continued quoting *Doe v. Barrington,*

"the privacy interest in one's exposure to the AIDS virus is even greater than one's privacy interest in ordinary medical records because of the stigma that attaches with the disease." *Id.* at 1202. The court balanced the state's interest in having the information (where to incarcerate, creating a treatment plan, and regarding care of the prisoner's children), against her privacy rights, and concluded the prisoner's privacy rights were not violated, especially where there were adequate safeguards that the information obtained would not be revealed to the general public. *Id.* at 1202–1203.

*United States v. Westinghouse Electric Corp.*, 638 F.2d 570 (3rd Cir.1980), allowed a national agency to compel an employer to divulge employee medical records, but took into account other factors: 1) safeguards built into the system; 2) the need to compile medical information to monitor health hazards in the work place; and 3) that the individual's medical records would not be accessible to the general public. *Id.* at 578–80. The government also showed a genuine societal interest in acquiring the medical information.

The oft-cited *Doe v. Barrington*, 729 F.Supp. 376, analyzed the disclosure by police to neighbors that the plaintiff's husband had AIDS. Holding the government's interest in disclosure did not outweigh the substantial privacy interest involved, the court wrote that the state of medical knowledge at the time of the incident did not establish transmittal of the disease by casual contact and, therefore, there was no need to warn the neighbors. *Id.* at 385.

The cases previously cited, plus *Woods v. White*, 689 F.Supp. 874 (W.D.Wis.1988) aff'd 899 F.2d 17 (7th Cir.1990), and *Harris v. Thigpen*, 941 F.2d 1495 (11th Cir.1991); establish a right of privacy to inmate medical records, and especially records as to HIV and AIDS. For the government or a prison system or, in this case, a court to acquire such information, it must show a compelling interest, and the government must safeguard the confidentiality of such information.

The government here is a circuit court, which does not house or treat inmates, and its employees and spectators will have only casual contract with prisoners, and it has not shown a compelling interest; therefore, the reason for the Rule cannot be upheld. The activities which cause transmittal of the HIV virus should not occur in court; and adequate safeguards can be universally used as to all litigants in court. "... [T]here is also a slight risk of contracting HIV infection through non-needle-stick, open-wound or mucous membrane (e.g. eyes, nose, and mouth) exposure. Such cases have involved health-care workers whose broken skin or mucous membranes have come into contact with contaminated blood, usually as a result of failure to follow CDC-recommended precautions." *Harris v. Thigpen*, 941 F.2d at 1503, n. 13. Further, in the case at bar, implementation of the Rule offers no adequate safeguards that the information acquired in the *in camera* inspection will not be divulged to the public, or at least obvious to any observer, which inmate is HIV positive. The order in mandamus compelling Corrections to divulge the HIV and AIDS information was improvidently granted.

■ An additional problem with the application of the Rule is the potential violation of the Mo. Const. Article I § 14 which provides:

"that the courts of justice shall be open to every person, and certain remedy afforded for every injury to a person, property or character, and that the right and justice shall be administered without sale, denial or delay."

This portion of the Constitution does not create a right but, rather, "protects the enforcement of rights acknowledged by the law." *Mahoney v. Doerhoff Surgical Services Inc.*, 807 S.W.2d 503, 510 (Mo. banc 1991). The Supreme Court of Missouri has distinguished between statutes which impose procedural bars to access to the courts and those that change the common law by the elimination of a cause of action. *Adams v. Children's Mercy Hospital*, 832 S.W.2d 898, 905 (Mo. banc 1992) cert. denied — U.S. ——, 113 S.Ct. 511, 121 L.Ed.2d 446 (1992). Those which affect a procedural bar are impermissible. *Id.* This measure, if enforced, would act as a procedural bar against those inmates who do not have their medical files produced.

Furthermore, inmates cannot be denied the opportunity to petition the courts for a writ of habeas corpus. *Thompson v. Bond,* 421 F.Supp. 878, 882 (W.D.Mo.1976) (citing *Ex Parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941)). Any restriction which unduly impinges upon an inmate's right to seek a writ of habeas corpus is invalid. *Id.* The right to access is broad, affecting both state and federal courts, regarding what ever type of relief which is sought. *Id.* (citing *Hooks v. Wainwright,* 352 F.Supp. 163, 167 (M.D.Fla.1972)). Here the record shows "such writs will be denied unless the necessary medical information is received," and "the prisoner will be denied access to this court."

A writ of prohibition prevents lower courts from acting without, or in excess of their jurisdiction. *State ex rel. Police Retirement v. Mummert,* 875 S.W.2d 553, 555 (Mo. banc 1994). The Rule exceeds the court's jurisdiction and the preliminary order prohibiting enforcement of the Rule as to hepatitis and TB is made absolute. The preliminary order in mandamus ordering Corrections to provide HIV and AIDs records is quashed and a permanent order is now entered prohibiting enforcement of this portion of the rule. Enforcement of the Rule is prohibited.

All concur.