**Roy HETZEL, Plaintiff,**

v.

**Jim SWARTZ, et al., Defendants.**

**Civil No. 3:CV–95–0437.**

United States District Court,
M.D. Pennsylvania.

Dec. 18, 1995.

262

Roy Hetzel, Wilkes–Barre, PA, pro se.

Timothy J. Holland, O'Malley & Harris, Wilkes Barre, PA, for defendants.

## *MEMORANDUM*

CONABOY, District Judge.

### *Background*

Plaintiff Roy Hetzel, an inmate at Luzerne County Prison (the "Prison") in Wilkes–Barre, Pennsylvania, filed this action under 42 U.S.C. § 1983 against Community Counseling Services of Northeastern Pa. ("CCS")[1] and Jim Swartz, who is employed by Community Counseling and works as a counselor at the Prison. Plaintiff proceeds *pro se* and *in forma pauperis*. Document 4 of the record. The court has jurisdiction over this suit under 28 U.S.C. §§ 1331 and 1343(a).

Liberally construing this *pro se* plaintiff's complaint, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), he alleges: failure to provide psychological or psychiatric care as required by the Eighth Amendment of the United States Constitution; failure to provide a copy of the plaintiff's medical records to him pursuant to his express authorization via a release form; and violations of his right to freedom from

1. This defendant provided its full name in a later pleading and that name is reflected here.

invasion of privacy guaranteed by the Fourteenth Amendment. Document 1 of the record. More specifically, he claims that Swartz acted unlawfully by refusing to provide counseling to the plaintiff although he suffers from a terminal disease, by disclosing information about the plaintiff's condition to an unnamed doctor and to "prison officers and head counselors," *id.* at p. 4 [2], and, as stated above, by refusing to give the plaintiff a copy of his medical records. For relief the plaintiff requests an unspecified amount of damages and injunctive relief in the form of counseling from an individual other than Swartz.

In response to the complaint the defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Document 15 of the record. No answer has been filed. The court has denied two motions by the plaintiff for appointment of counsel, Documents 12 and 22 of the record, but this issue may be reconsidered *sua sponte* or pursuant to a motion. The dispositive motion is ripe for the court's consideration.

### Discussion

In support of their motion to dismiss, the defendants press the following arguments: the plaintiff has failed to plead that he has a serious medical need and that Swartz was deliberately indifferent to that need; the plaintiff has failed to state a cause of action for invasion of privacy; and the plaintiff has failed to aver that CCS was directly liable for the alleged unlawful actions. Documents 15 and 16 of the record. Swartz concedes for the purpose of this motion that he acted under color of state law. Document 15 of the record, p. 2. Also, the defendants do not argue that the plaintiff lacked a privacy interest in his medical records. Document 16 of the record, pp. 7–8.

The court notes that the defendants do not address the plaintiff's substantive due process claim (which was not *clearly* presented in the complaint): Swartz unlawfully denied the plaintiff a copy of his medical records. This intentional deprivation of personal property claim is clearly meritless, however, *see Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and will be dismissed. In addition, the defendants do not respond to another claim by the plaintiff, which is apparent only under the requisite liberal construction of the complaint: that Swartz revealed information about the plaintiff's illness to "prison officers and head counselors." Document 1 of the record, p. 4.

▬ Now, the court will review important and pertinent legal principles with respect to the remaining claims. In considering a motion to dismiss, the court must accept the veracity of a plaintiff's allegations. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *White v. Napoleon*, 897 F.2d 103, 106 (3d Cir.1990). Furthermore, "the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *D.P. Enters., Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984). "The test for reviewing a 12(b)(6) motion is whether under any reasonable reading of the pleadings, plaintiff may be entitled to relief." *Simon v. Cebrick*, 53 F.3d 17, 19 (3rd Cir.1995). However, a court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993) (quoting *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir.1979)).

▬ In order to state a viable § 1983 claim, a plaintiff must allege that the conduct complained of was committed by a person acting under color of state law and that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or by laws of the United States. *E.g., Cohen v. City of Philadelphia*, 736 F.2d 81,

---

**2.** The plaintiff does not state in his complaint that he suffers from the Acquired Immune Deficiency Syndrome ("AIDS") but does give that information in his brief in opposition to the pending defendants' motion to dismiss. Document 23 of the record. In this brief the plaintiff also argues that Swartz violated state law as well as federal law but cites the "Act 148" instead of the Pennsylvania "Confidentiality of HIV–Related Information Act," which is described below.

83 (3d Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980). A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *E.g., Monell v. Department of Social Serv. of the City of N.Y.,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1979); *Gay v. Petsock,* 917 F.2d 768, 771 (3d Cir.1990); *Capone v. Marinelli,* 868 F.2d 102, 106 n. 7 (3d Cir.1989); *Rode v. Dellarciprete,* 845 F.2d 1195, 1207–08 (3d Cir.1988). Liability may not be imposed under § 1983 on the principle of *respondeat superior. Id.* at 106 (citing *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir. 1976)). A private doctor who provides medical services to inmates pursuant to a contract with the prison may be held liable in a civil rights suit. *West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 2258, 101 L.Ed.2d 40 (1988). Absent a showing that an employee committed the alleged unlawful act(s) at issue pursuant to a policy of her or his private corporate employer, said employer cannot be held vicariously liable for its employee's purported misdeed(s) in a civil rights suit. *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir.1982); *McIlwain v. Prince William Hospital,* 774 F.Supp. 986, 990 (E.D.Va.1991); *Temple v. Albert,* 719 F.Supp. 265, 268 (S.D.N.Y.1989).

 The prison wall is not a solid barrier between an inmate and constitutional protections. *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). But "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). In regard to an individual's Fourteenth Amendment liberty right to keep personal medical information private, it is initially noted that there are two (2) primary kinds of privacy interests: "[o]ne is the individual interest *in avoiding disclosure of personal matters,* and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) (emphasis added). In a case involving private employee medical records, our Court of Appeals held that an individual had a privacy interest in such a medical record and stated:

> There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection. Information about one's body and state of health is matter which the individual is ordinarily entitled to retain within the 'private enclave where he may lead a private life' ... The medical information requested in this case is more extensive than the mere fact of prescription drug usage ... and may be more revealing of intimate details.

*United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3d Cir.1980) (citations omitted). However, "the right of an individual to control access to her or his medical history is not absolute," *id.* at 578, and courts have weighed the competing interests of privacy and the necessity of disclosure of sensitive information. *See id.* at 577–81;[3] *Harris v. Thigpen,* 941 F.2d 1495, 1515–21 (11th Cir.1991); *Faison v. Parker,* 823 F.Supp. 1198, 1201–05 (E.D.Pa.1993). Various courts, including sister courts within this circuit, have held or assumed that an inmate or a non-inmate has a privacy interest in the fact that she or he has a terminal illness. *Watson v. Lowcountry Red Cross,* 974 F.2d 482, 487 (4th Cir.1992) (non-inmate); *Harris,* 941

---

**3.** The factors to be considered in this analysis are: 1) the "type of record" containing the information at issue; 2) the nature of the information the record "does or might contain"; 3) the possibility of "harm in any subsequent nonconsensual disclosure"; 4) "the injury from disclosure to the relationship in which the record was generated"; 5) the effectiveness of "safeguards to prevent unauthorized disclosure"; 6) the amount of "need" to obtain the information; and 7) "whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Id.* at 578.

F.2d at 1513–14 (inmates); *Faison,* 823 F.Supp. at 1201–02 (non-inmates); *Austin v. Pennsylvania Dep't of Corrections,* 876 F.Supp. 1437, 1467 (E.D.Pa.1995) (inmates); *Nolley v. County of Erie,* 776 F.Supp. 715, 731 (W.D.N.Y.1991) (inmate); *Doe v. Borough of Barrington,* 729 F.Supp. 376, 384 (D.N.J.1990) (non-inmate); *Woods v. White,* 689 F.Supp. 874, 876 (W.D.Wis.1988) (inmate), *aff'd,* 899 F.2d 17 (7th Cir.1990); *Doe v. Coughlin,* 697 F.Supp. 1234, 1237 (N.D.N.Y.1988). *But see Doe v. Wigginton,* 21 F.3d 733, 740 (6th Cir.1994) (no privacy right violated when non-medical corrections officer reviewed confidential medical file of inmate to obtain information after inmate refused to answer questions about his current medical condition).[4]

■ Now addressing an inmate's right to counseling, the seminal principle is that failure to provide adequate medical treatment is a violation of the Eighth Amendment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Our Court of Appeals in *Inmates of the Allegheny County Jail v. Pierce,* 612 F.2d 754 (3d Cir.1979), a case challenging, *inter alia,* the program of mental health care at a prison, held that "when inmates with serious mental ills are effectively prevented from being diagnosed and treated by qualified professionals, the system of care does not meet the constitutional requirements set forth by *Estelle v. Gamble, supra,* and thus violates" the Constitution. *Id.* at 763. *Accord Greason v. Kemp,* 891 F.2d 829, 834 (11th Cir.1990); *Wellman v. Faulkner,* 715 F.2d 269, 272 (7th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984); *Ramos v. Lamm,* 639 F.2d 559, 574 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). Deliberate indifference under the Eighth Amendment occurs when "the official acted or failed to act despite his

knowledge of a substantial risk of serious harm." *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).[5]

The court now evaluates the complaint *sub judice* in accordance with all of these legal principles in mind. First, it is clear that CCS may be dismissed from this suit: the plaintiff argues in his brief that Swartz's status as an employee of CCS "makes them as liable as [Swartz] himself." Document 23 of the record, unnumbered p. 6. This is an attempt to impose liability on CCS pursuant to the theory of *respondeat superior,* and it must fail.

■ Second, in regard to the alleged unauthorized disclosure of private medical information to an unnamed doctor and to other unnamed prison employees, the defendants correctly point out that private medical information could be communicated without an invasion of privacy to a doctor who was treating or who would be treating the plaintiff. The plaintiff fails to describe in his complaint *what information* was communicated. He does not describe in his complaint *the nature of* his terminal illness. (Although the plaintiff reveals in his opposing brief that he has AIDS, this information *may not* be considered part of the complaint because it appears only in a brief. *See Hauptmann v. Wilentz,* 570 F.Supp. 351, 364 (D.N.J.1983), *aff'd without opinion,* 770 F.2d 1070 (3d Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986).) The plaintiff does not give the name of the doctor or identify the doctor in any way that reveals whether she or he has a legitimate right to know about the plaintiff's medical condition. The plaintiff similarly gives no identifying information about the "prison officers and head counselors" to whom Swartz allegedly revealed private medical information. However, the plaintiff may be able to provide more detailed

---

4. The Pennsylvania legislature passed the "Confidentiality of HIV–Related Information Act," 35 Pa.Cons.Stat.Ann. §§ 7601–7612, effective on or about March 1, 1991 (the "Act"), which in Section 7607 limits disclosure of "confidential HIV-related information" to health care providers and to others. Section 7609 sets forth the conditions to be met by a physician if she or he wishes

to reveal "confidential HIV-related information." Section 7610 creates a private cause of action against an alleged violator of the Act.

5. The Act mandates "post-test counseling" immediately after an individual learns of the HIV-virus test result. 35 Pa.Cons.Stat.Ann. § 7605.

information in an *amended complaint;* before the court is a motion to dismiss not a motion for summary judgment. The court emphasizes that the plaintiff may amend his complaint once as of right before an answer is filed and, after an answer is filed, once with the permission of the court. *See* Fed. R.Civ.P. 15. It is necessary and important to allow him this chance so that the issues raised in this litigation may be decided fully on their merits. *See Weaver v. Wilcox,* 650 F.2d 22, 27–28 (3d Cir.1981); *Kauffman v. Moss,* 420 F.2d 1270, 1275–76 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970).[6] At present the court cannot find that the plaintiff positively is not entitled to relief on these invasion of privacy claims.

██ In regard to the plaintiff's charge that he has been denied counseling although he has a terminal illness, he avers that he has "been in great distress" and has "suffered greatly...." Document 1 of the record, p. 4. In letters to the court, the plaintiff indicates that his mental capacities are diminishing, and his health is declining steadily. In an amended complaint the plaintiff may describe more fully the effects of his terminal illness. The court cannot conclude at present that the plaintiff does not have a serious medical need which should be treated through counseling, and that in general he could not prove any set of facts consistent with his Eighth Amendment allegations which would entitle him to relief.[7] Thus, the motion to dismiss will be granted only in regard to the claims against CCS and to the due process claim about Swartz's refusal to

provide the plaintiff with a copy of his medical records. An appropriate order is attached.

### *ORDER*

AND NOW, THEREFORE, THIS 18th DAY OF DECEMBER, 1995, IT IS HEREBY ORDERED THAT:

1. The defendants' motion to dismiss (Document 15 of the record) is denied in part and granted in part.

2. The defendants' motion to dismiss is granted with prejudice only in regard to: the due process claim about defendant Swartz's refusal to provide a copy of medical records and the claims against defendant Community Counseling Services of Northeastern Pa. The motion is denied in all other respects.

3. Defendant Community Counseling Services of Northeastern Pa. is dismissed from this suit.

---

**6.** The amended complaint "must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane,* 809 F.Supp. 1185, 1198 (M.D.Pa.1992).

**7.** In *Harris v. Thigpen, supra,* the United States Court of Appeals for the Eleventh Circuit considered whether prison officials were deliberately indifferent to the mental health needs of segregated inmates who were dying and stated: "[H]elping a terminally sick prisoner 'cope' psychologically with various aspects of a dread physical illness, while therapeutic, may be a more expansive view of mental health care than that contemplated by the eighth amendment." 941 F.2d at 1511. Affirming the district court's conclusion that there was no deliberate indifference, the appellate court noted that incarceration

"is not intended to be pleasant. In prison, '[f]rustration, resentment and despair are commonplace.'" *Id.* at 1511 n. 24 (quoting *Wolff v. McDonnell,* 418 U.S. 539, 562, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974)).

But in *Peterkin v. Jeffes,* 855 F.2d 1021 (3d Cir.1988), which involved, *inter alia,* charges of deliberate indifference to the mental health needs of death-sentenced inmates, the court stated that prison officials may not "turn a blind eye to the mental and emotional state of the prisoners," *id.* at 1030, and rejected the district court's apparent alternative conclusion that " 'psychological disturbances ... are a function of the sentences imposed....' " *Id.* at n. 15 (quoting *Peterkin v. Jeffes,* 661 F.Supp. 895, 926 (E.D.Pa. 1987)).