OPINION OF THE COURT
ROTH, Circuit Judge:
John Doe, a former inmate of the Pennsylvania Department of Corrections, is HIV-positive. He was informed by the medical staff at the State Correctional Institution at Pittsburgh (SCIP) that his medical condition would be kept confidential. However, because of certain practices permitted by prison officials, Doe’s condition was not kept confidential. Doe sued under 42 U.S.C. § 1983, claiming that prison practices violated his right to medical privacy under the Fourteenth Amendment and under the Pennsylvania Confidentiality of HIV-Related Information Act, 35 P.S. § 7601 et seq. The District Court granted defendants’ motions to dismiss the § 1983 claims on the basis of qualified immunity, declined jurisdiction over the state claims, and dismissed the case.
Although we ultimately agree that defendants are entitled to qualified immunity, we do not agree with the District Court’s reasoning. We hold that the Fourteenth Amendment protects an inmate’s right to medical privacy, subject to legitimate penological interests. However, because this right was not clearly established at the time of defendants’ conduct, we will affirm the dismissal of Doe’s complaint.
I. FACTS
John Doe arrived at SCIP on January 11, 1995. Shortly thereafter, Doe was informed by the medical staff that he was HIV-positive. After signing a written consent of disclosure form, he was told that his medical condition would be kept confidential and that medical records relating to his illness would be maintained separately from his general prison file.
Because of certain procedures permitted by defendants, Doe’s condition was not kept confidential. Specifically, when Doe was taken for sick call appointments, staff informed the escorting officers of Doe’s medical condition. During physician visits, staff kept the door to the clinic room open, allowing officers, inmates, and *312 guards in the area to see and hear Doe and the treating physician. Finally, while administering medication, nurses announced his medication loudly enough for others to hear, allowing inmates to infer Doe’s condition. Doe filed administrative grievances concerning the sick call and medication distribution practices, but the grievances did not bring about any change in the practices.
On July 11, 1997, Doe, proceeding pro se, filed suit under 42 U.S.C. § 1983 and the Pennsylvania Confidentiality of HIV Related Information Act, 35 P.S. § 7601 et seq. in the United States District Court for the Western District of Pennsylvania. The complaint named as defendants Joan Delie, Health Care Administrator at SCIP; Dr. Paul Noel, Medical Director of SCIP; Diane Manson, a Nurse/Grievance Officer; and Sophie Swika and Kim Zimmerman, both nurses at SCIP. Doe claimed his constitutional right to privacy was violated by the “open-door” examination room policy, by the disclosure of his medical condition to corrections officer escorts, and by the loud announcement of the names of his medications. He alleged that these practices made him reluctant to discuss embarrassing symptoms with doctors, subjected him to psychological harassment and humiliation, and caused him to discontinue treatment. Doe requested declaratory and injunctive relief, as well as nominal, compensatory, and punitive damages.
On August 5,1997, Doe filed motions for a temporary restraining order and a preliminary injunction ordering defendants to provide for nondisclosure of his medical information during sick call visits and medication distribution. The Magistrate Judge recommended that both motions be denied pending service of the complaint and motions on defendants. This Report and Recommendation was adopted by the District Court on September 16,1997.
After service of the complaint,[1] defendants Delie, Manson, and Swika, and defendant Noel by separate motion, moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doe was granted leave to file an amended complaint and did so on March 3, 1998. The amended complaint added James Price, the superintendent of SCIP, as a defendant and otherwise reasserted Doe’s privacy claims. Defendants reasserted their motions to dismiss based, inter alia, on the defense of qualified immunity, which shields public officials from actions for damages unless their conduct was unreasonable in light of clearly established law.
The Magistrate Judge issued a Report and Recommendation on September 21, 1998. The Magistrate found that no clear federal constitutional right to nondisclosure of an inmate’s medical condition exists and recommended dismissal of defendants Delie, Manson, Swika, and Price on grounds of qualified immunity. The Magistrate found that the only involvement alleged as to defendant Noel was his inadequate response to Doe’s grievances, which did not give rise to a § 1983 claim. In addition, the Magistrate Judge found, sua sponte, that defendant Zimmerman was entitled to qualified immunity for her alleged misconduct and recommended dismissal of the complaint against her pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Finally, the Magistrate Judge recommended that the District Court decline to exercise supplemental jurisdiction over Doe’s state law claims.
*313 Over Doe’s objections, the District Court adopted the Magistrate Judge’s Report and Recommendation and dismissed the case on December 17, 1998. On January 18, 1999, Doe filed his notice of appeal of the District Court’s decision. We appointed counsel for Doe and have benefitted as a result from counsel’s 'willingness to undertake this representation.
Shortly before oral argument, counsel informed us that Doe was awaiting a retrial on his conviction. Counsel has now informed us that Doe was acquitted in his re-trial, and therefore is no longer an inmate at SCIP.
II. JURISDICTION AND STANDARD OF REVIEW
The District Court had subject matter jurisdiction over Doe’s § 1983 claims pursuant to 28 U.S.C. § 1331 and over the state law claim under 28 U.S.C. § 1367. We have appellate jurisdiction over the District Court’s final judgment pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court’s dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255 (3d Cir.1994). We must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them. Moore v. Tartler, 986 F.2d 682, 685 (3d Cir.1993). We may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).
III. DISCUSSION
Because Doe is no longer an inmate at SCIP, we must first consider whether his claims are moot before reviewing the District Court’s qualified immunity analysis.
A. MOOTNESS
The Constitution limits the power of the federal judiciary to the resolution of “cases and controversies.” See U.S. Const. art. III, § 2, cl. 1. Federal courts are not empowered to decide moot questions. North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (per curiam). The mootness doctrine requires that an actual controversy exist at all stages of review, not merely at the time the complaint is filed. New Jersey Turnpike Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 31 (3d Cir.1985).
We have stated that “mootness has two aspects: (1) the issues presented are no longer ‘live’ or (2) the parties lack a cognizable interest in the outcome.” Id. As a result of his acquittal, Doe is no longer an inmate at SCIP. It is clear that any declaratory or injunctive relief with respect to the staff at SCIP would have no impact on him, and therefore his equitable claims are moot.
Doe argues that his case falls into the “capable of repetition, yet evading review” exception to the mootness doctrine. The exception is limited to cases which have two elements: “(1) the challenged action was in its duration too short to be fully litigated to its cessation or expiration and (2) there is a reasonable likelihood that the same complaining party would be subjected to the same action again.” Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir.1993) (emphasis omitted), quoting Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)(per curiam). Given the length of time it took Doe, proceeding pro se and in forma pauperis, to reach this stage of the litigation, *314 we will assume, arguendo, that the first element is satisfied.
However, as a result of his acquittal, we simply cannot conclude that there is a reasonable likelihood that he would be subjected to the same conduct. See Weinstein, 423 U.S. at 149, 96 S.Ct. 347 (former inmate’s challenge to parole decisions mooted upon his release from supervision); see also Abdul-Akbar, 4 F.3d at 206 (cautioning against “conjecture” that prisoner could again be incarcerated at maximum security unit and holding prisoner’s release from maximum security unit mooted challenge to law library in maximum security unit).[2] Doe is no longer incarcerated at SCIP. Because there is no reasonable likelihood that Doe will be subjected to the same action, Doe’s acquittal has clearly mooted his claims for declaratory and injunctive relief.
Nonetheless, where a plaintiff has requested several forms of relief and some of the requests become moot, the court must still consider the viability of the remaining requests. Jersey Cent. Power & Light Co. v. State of New Jersey, 772 F.2d 35, 40 (3d Cir.1985). “[T]he availability of damages or other monetary relief almost always avoids mootness.” Id. at 41.[3] Therefore, we must review the District Court’s qualified immunity analysis with respect to Doe’s nominal and punitive damages claims.
B. A PRISONER’S RIGHT TO PRIVACY IN MEDICAL RECORDS
Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. This section does not create any new substantive rights, but it provides a remedy for the violation of a federal constitutional or statutory right conferred elsewhere. Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).
When the defendant in a § 1983 action claims qualified immunity, a court must first determine if the plaintiffs allegations are sufficient to establish the violation of a federal constitutional or statutory right. Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), citing Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999).[4] If *315 the plaintiffs allegations meet this threshold, a court must next determine whether the right that the defendant’s conduct allegedly violated was a clearly established one, about which a reasonable person would have known. Id. If the plaintiffs allegations fail to satisfy either inquiry, then a defendant is entitled to qualified immunity and dismissal of the case. Deciding “this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.” Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).
With this framework in mind, we must determine whether an HIV-positive inmate has a right to privacy in his medical information. If so, we must determine whether that right was clearly established in 1995.
1.
An individual has a constitutional right to privacy which protects “the individual interest in avoiding disclosure of personal matters.” Whalen v. Roe, 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). We have long recognized the right to privacy in one’s medical information: “There can be no question that ... medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection.” United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir.1980). The right to privacy in one’s medical information extends to prescription records. Doe v. Southeastern Pa. Transp. Auth., 72 F.3d 1133, 1138 (3d Cir.1995), cert. denied 519 U.S. 808, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996) [hereinafter “Doe v. SEPTA”]. In Doe v. SEPTA we acknowledged that the privacy interest in information regarding one’s HIV status is particularly strong because of the stigma, potential for harassment, and “risk of much harm from non-consensual dissemination of the information.” Id. at 1140.
The District Court recognized Doe’s right to privacy in his medical information, but concluded that such a right does not exist in prison. We disagree. As the Supreme Court has noted, prison inmates do not shed all fundamental protections of the Constitution at the prison gates. Wolff v. McDonnell, 418 U.S. 539, 555, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Inmates retain those rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).
For example, prisoners retain rights afforded by the First Amendment. O’Lone v. Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). They retain the protection of due process, Wolff, 418 *316 U.S. at 555, 94 S.Ct. 2963, and the protection against racial discrimination. Lee v. Washington, 390 U.S. 333, 334, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968) (per curiam). Of course, prisoners retain the Eighth Amendment’s protection against cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). While many rights survive incarceration, however, it is clear that some rights retained by free citizens are necessarily extinguished by imprisonment.
The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells. Hudson v. Palmer, 468 U.S. 517, 529, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration. Id. at 527, 104 S.Ct. 3194. Mindful that internal security is a chief concern in prisons, the Court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells. Id. Therefore, “the Fourth Amendment has no applicability to a prison cell.” Id. at 536, 104 S.Ct. 3194.
However, Doe’s asserted right to privacy in his medical information is completely different than the right extinguished in Hudson. See, e.g., Powell v. Schriver, 175 F.3d 107, 112 n. 3 (2d Cir.1999) (noting right to confidentiality of medical information is distinct from right of privacy implicated in Hudson)', Anderson v. Romero, 72 F.3d 518, 522 (7th Cir.1995) (same). The Hudson court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration. In the instant case, Doe is asserting his Fourteenth Amendment right to privacy in his medical information. The right to nondisclosure of one’s medical information emanates from a different source[5] and protects different interests than the right to be free from unreasonable searches and seizures. Compare Whalen, 429 U.S. at *317 598-99, 97 S.Ct. 869 with Hudson, 468 U.S. at 525, 104 S.Ct. 3194.
It is beyond question that information about one’s HTV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information. See Doe v. SEPTA, 72 F.3d at 1140; Westinghouse, 638 F.2d at 577. Moreover, a prisoner’s right to privacy in this medical information is not fundamentally inconsistent with incarceration. Therefore, we join the Second Circuit in recognizing that the constitutional right to privacy in one’s medical information exists in prison. See Powell, 175 F.3d at 112.
We acknowledge, however, that a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen. We do not suggest that Doe has a right to conceal this diagnosed medical condition from everyone in the corrections system. Doe’s constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security.
Specifically, an inmate’s constitutional right may be curtailed by a policy or regulation that is shown to be “reasonably related to legitimate penological interests.” Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Courts must respect the administrative concerns underlying a prison regulation, without requiring proof that the regulation is the least restrictive means of addressing those concerns. We have summarized the analysis as follows:
[Turner] directs courts to assess the overall reasonableness of such regulations by weighing four factors. First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational. Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate the prisoner’s rights at de minimis cost to valid penological interests.
DeHart v. Horn, 227 F.3d 47, 51 (3d Cir.2000) (en banc) (internal quotations omitted).
Appellant alleges that his constitutional right to privacy in his medical information was violated by three practices: the “open-door” examination room policy, the disclosure of his medical condition to corrections officer escorts, and the loud announcement of the names of his medications. Doe concedes that the “open door” examination room policy could conceivably be justified by a legitimate security interest but contends that no such interest has been advanced here. In addition, Doe maintains that the other disclosures are unrelated to any legitimate penological interests, and thus violated his right to privacy.
Given the disposition of the case by the District Court, defendants did not have the opportunity to come forward with any evidence of legitimate penological interests, costs of accommodating Doe’s privacy interest, or availability of alternatives to the disclosures made here. Based on this undeveloped record, we are unable to assess any of the Turner factors. Rather than speculating about these factors, we ordinarily would remand for consideration by the trial court on those issues. However, we need not decide those issues in this case because of our disposition of the sec *318 ond prong of the qualified immunity analysis.
2.
As stated earlier, the qualified immunity doctrine shields public officials from actions for damages unless their conduct was unreasonable in light of clearly established law. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We have recognized that qualified immunity applies if “reasonable officials in the defendants’ position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful.” Good v. Dauphin County Social Servs. for Children & Youth, 891 F.2d 1087, 1092 (3d Cir.1989).
Thus, having determined that Doe has alleged a violation of a constitutional right, we must determine whether Doe’s right to privacy was “clearly established” in a “particularized” sense. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). “The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Id. We do not require precise factual correspondence between the right asserted and prior case law. Good, 891 F.2d at 1092. Whether an official may be protected by qualified immunity turns on the “objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.” Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal quotes omitted). The issue is whether, given the established law and the information available to Defendants, reasonable prison officials in Defendants’ positions could have believed that their conduct was lawful. See Paff v. Kaltenbach, 204 F.3d 425, 431 (3d Cir.2000).
Appellant makes three arguments in support of his contention that his right to privacy in his medical information was clearly established in 1995. First, Doe argues that a Pennsylvania statute both creates a right and serves to inform defendants of the existence of that right. Second, Doe argues that, by 1995, a “growing consensus” of other courts had held that inmates possess a right to privacy in their medical records. Finally, Doe argues that the class action settlement in Austin v. Pennsylvania Dept. of Corrections, 876 F.Supp. 1437 (E.D.Pa.1995), put defendants on specific notice of the existence of a prisoner’s constitutional right to privacy in his medical information. We address each argument in turn.
The Pennsylvania Confidentiality of HIV Related Information Act, 35 P.S. § 7603, became effective March 1, 1991. Under the Act, any person who obtains confidential HIV-related information in the course of providing health or social services, or pursuant to consent, may not disclose the information, except by consent, or to certain designated persons. 35 P.S. § 7607. The state right is enforceable in a private cause of action for damages. 35 P.S. § 7610. Doe contends that he consented to the HIV test but did not consent to the various disclosures made by defendants. While Doe concedes that the state statute cannot be the basis for his federal action, he argues that prison officials could not have been acting “reasonably” when they were in direct violation of a clear state statute; they thus lost the protections of qualified immunity.
This argument misinterprets the effect of a state law on a federal constitutional claim. The Supreme Court has held that officials do not forfeit qualified immunity from suit for violation of a federal constitutional right because they failed to comply with a clear state statute. Davis v. *319 Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); see also D.R. by L.R. v. Middle Bucks Area Vocat’l Tech. School, 972 F.2d 1364, 1375-76 (3d Cir.1992) (en banc) (“[I]llegality under the state statute can neither add to nor subtract from the constitutional validity of a state’s actions.”) (internal quotes and citation omitted). To overcome qualified immunity, Doe’s clearly established right must be the federal right on which the claim for relief is based.[6] Claims for violations of the Pennsylvania Confidentiality of HIV Related Information Act can be vindicated in state courts, or, as Doe did here, as a supplemental claim. But the state statute cannot “clearly establish” the federal right for qualified immunity purposes.
Second, a review of decisions which had addressed the issue by 1995 reveals that no court of appeals had held that prisoners retained a constitutional right to the privacy of their medical information. In fact, only a handful of district court opinions had done so.
The earliest circuit opinion addressing the issue analyzed a prison policy of segregating HIV-positive inmates from the general prison population. Harris v. Thigpen, 941 F.2d 1495, 1515-1521 (11th Cir.1991). In Harris, the Eleventh Circuit stated that the “precise nature and scope of the privacy right at issue in this case is rather ill-defined.” Id. at 1513. Nevertheless, the court assumed, arguendo, that HIV-positive inmates had a “constitutionally-protected privacy interest” in nondisclosure of their medical information. The court acknowledged that “the scope of such a right, however, is far from settled, and we need not divine its precise parameters here,” Id. at 1513 n. 26, because it found that the Department of Corrections’ decision to segregate such inmates from the general prison population served a legitimate penological interest in reducing the transmission of HIV and reducing the threat of violence. Id. at 1521.
Prior to 1995, other courts of appeals likewise upheld the segregation of HIV-positive inmates from the general population. See, e.g. Camarillo v. McCarthy, 998 F.2d 638, 640 n. 2 (9th Cir.1993) (reserving question of whether HIV segregation policy is constitutional but holding officers entitled to qualified immunity); Moore v. Mabus, 976 F.2d 268, 271 (5th Cir.1992) (finding HIV segregation policy reasonably related to legitimate penological interests).[7] Of course, the nature of the disclosures in HIV housing segregation cases is different than the disclosures Doe challenges here.
In 1995, the Seventh Circuit considered disclosures that are closer to the ones that occurred in the present case. Anderson v. Romero, 72 F.3d 518 (7th Cir.1995). In *320 Anderson, the prison superintendent told a guard, in the presence of another guard, to make sure inmate Anderson was in a cell by himself because he was HIV-positive. The information was repeated to at least one other guard. The Anderson court recognized a “qualified constitutional right to confidentiality of medical records and medical communications” outside of prison, but concluded that it was an open question as to whether the right applied in the prison setting. Id. at 522. The court rejected two district court opinions which had found that nonsystematic disclosures of HIV status had violated HIV-positive inmates’ right to privacy and instead relied on the fact no appellate court had yet recognized the right. Id. at 523-25 (discussing Woods v. White, 689 F.Supp. 874 (W.D.Wis.1988) aff'd. 899 F.2d 17 (7th Cir.1990) (table) and Rodriguez v. Coughlin, 1989 WL 59607 (W.D.N.Y.1989)). The Anderson court concluded that the officials were entitled to qualified immunity because, if such a right existed, it was not clearly established in 1992 nor in 1995.[8] Id. at 524.
We note that Doe has cited several district court cases which concluded, by 1995, that inmates have a right to privacy in their medical information. See Austin v. Pennsylvania Dept. of Corrections, 876 F.Supp. 1437 (E.D.Pa.1995) (approving class action settlement including policies regarding treatment of HIV positive inmates); Clarkson v. Coughlin, 898 F.Supp. 1019 (S.D.N.Y.1995) (failure to provide qualified interpreters violated deaf inmates’ right to privacy); Faison v. Parker, 823 F.Supp. 1198 (E.D.Pa.1993) (disclosure of inmate’s medical conditions in presentence report did not violate right to privacy); Nolley v. County of Erie, 776 F.Supp. 715 (W.D.N.Y.1991) (HIV-positive inmate’s right to privacy violated by involuntary segregation and placing red stickers on his documents); Doe v. Coughlin, 697 F.Supp. 1234, 1238 (N.D.N.Y.1988) (granting preliminary injunction to halt involuntary segregation of HIV-positive inmates); Woods v. White, 689 F.Supp. 874, 876 (W.D.Wis.1988), aff'd. 899 F.2d 17 (7th Cir.1990) (table) (gratuitous disclosure of HIV-positive status to guards and inmates violated constitutional right to privacy).
Of course, all of these opinions are factually and legally distinguishable from the present case. Both Nolley and Doe v. Coughlin are HIV-positive inmate segregation cases. These cases conflict with the subsequent appellate HIV segregation cases, which upheld the practice.[9] See Camarillo, 998 F.2d at 640; Moore, 976 F.2d *321 at 271; Harris, 941 F.2d at 1515-21. Likewise, the district court decision in Woods v. White was specifically considered and rejected by the Seventh Circuit’s opinion in Anderson v. Romero, 72 F.3d at 525 (holding prisoners had no clearly established right to privacy in medical records in 1995). In Faison, the district court found that disclosure of an inmate’s medical conditions in a court-ordered presen-tence report did not violate the inmate’s right to privacy. 828 F.Supp. at 1205. And Clarkson v. Coughlin addressed deaf inmates, not HIV-positive ones. 898 F.Supp. at 1024.
In short, none of these decisions, individually or collectively, makes it sufficiently clear to reasonable officials that their conduct violated a prisoner’s federal constitutional right. District court opinions may be relevant to the determination of when a right was clearly established for qualified immunity analysis.[10] However, in this case, the absence of binding precedent in this circuit,[11] the doubts expressed by the most analogous appellate holding, together with the conflict among a handful of district court opinions, undermines any claim that the right was clearly established in 1995.
Finally, we address Doe’s argument regarding the settlement in Austin v. Pennsylvania Dept. of Corrections, 876 F.Supp. 1437 (E.D.Pa.1995). In Austin, the district court accepted a negotiated settlement between a class of inmates and the Pennsylvania Department of Corrections over numerous prison conditions, including medical care. As part of the settlement, the DOC agreed to keep inmates’ medical information regarding their HIV status confidential and to advocate a universal precautions policy instead of a notification policy in future union negotiations. Id. at 1453. Doe argues that, in light of the Austin settlement, prison officials could *322 not reasonably believe that non-consensual disclosures of an inmate’s HIV status were lawful.
We agree that, in some ways, the Austin settlement is more persuasive than the scattered district court opinions previously discussed. Austin has significant factual correspondence to Doe’s case. In addition, the opinion documents the participation of the DOC in lengthy negotiations regarding treatment of HIV-positive inmates to settle the class action. Cf. Buckley v. Rogerson, 133 F.3d 1125, 1130-31 (8th Cir.1998) (district court class action judgment against Missouri state prison system clearly established right for Iowa state prisoner to over come qualified immunity defense).
Nevertheless, Austin is also less persuasive than other district court opinions. Rather than providing a decision on the legal merits of the claims, the Austin court merely approved a settlement. As the Austin court itself noted, it “only evaluate[ed] the probable outcome of the litigation and [was] not required to weigh and decide each contention.” Austin, 876 F.Supp. at 1464 n. 16. The Austin court’s statement about the constitutionality of disclosing an inmate’s medical information was in response to proposed, and rejected, courses of conduct.[12] The legal conclusion regarding the constitutional right to privacy was dictum. It was not binding on the parties and it certainly did not clearly establish a constitutional right.
Nor can the fact that the DOC agreed to settle a case clearly establish a federal constitutional right. The law favors settlement, particularly in class actions and other complex cases, to conserve judicial resources and reduce parties’ costs. See In Re General Motors Corp. Pick-Up Truck Fuel Tank Litig., 55 F.3d 768, 784 (3d Cir.) cert. denied, General Motors v. French, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995). Where, as in Austin, the factual and legal issues were numerous, broad and complex, the decision to settle a case cannot be elevated to the recognition of a constitutional right.
Based on the foregoing, we cannot conclude that the cited authorities, individually or in combination, clearly established an inmate’s constitutional right to privacy in his medical information. Government officials must stay abreast of constitutional developments, but they are not “expected to predict the future course of constitutional law.” Wilson v. Layne, 526 U.S. at 617, 119 S.Ct. 1692. We conclude that the contours of defendants’ legal obligations under the Constitution were not sufficiently clear in 1995 that a reasonable prison official would understand that the non-consensual disclosure of a prisoner’s HIV status violates the Constitution. Accordingly, we will affirm the District Court order granting Defendants qualified immunity from Plaintiff’s claims.[13]
*323 3.
Although the exact boundaries of such a right have yet to be established, we hold today that prison inmates retain a Fourteenth Amendment substantive due process right to privacy in their medical information. The exact parameters of a prisoner’s right to privacy in that information will have to be determined in a later case on a more complete record, where the Turner factors can be fully considered in the context of the penological interests concerned. Moreover, because we are granting qualified immunity to the defendants, we also do not go on to the issue of the standard that is utilized to determine whether a prisoner’s right to privacy in his medical information has been violated. That determination too •will have to wait for another day.
IV. CONCLUSION
We hold that the Fourteenth Amendment protects an inmate’s right to medical privacy, subject to legitimate penological interests. However, because this right was not clearly established at the time of defendants’ conduct, we will affirm the District Court’s dismissal of Doe’s complaint on the basis of qualified immunity.

. Nurse Zimmerman was never served with process in the district court. She is not a Commonwealth employee, and was apparently referred to SCIP through a private nursing facility. Efforts to locate her at that agency were unsuccessful.

. But see Doe v. Wigginton, 21 F.3d 733, 736 (6th Cir.1994) (no discussion of mootness, although facts state plaintiff was released from prison prior to appeal). The Sixth Circuit reached the merits to dismiss the privacy claim of an HIV-positive prisoner, but, as discussed in footnote six, infra, the substantive law of privacy in the Sixth Circuit conflicts with that of the Third Circuit.

. While the District Court did not consider the effect of § 803(d)(e) of the Prison Litigátion Reform Act, codified at 42 U.S.C. § 1997e(e), on Doe’s claims, we have since recognized that § 1997e(e) prohibits compensatory damages for mental or emotional injury absent allegations of physical injury. Allah v. Al-Hafeez, 226 F.3d 247, 251 (3d Cir.2000). However, § 1997e(e) does not bar claims seeking nominal damages to vindicate constitutional rights, nor claims seeking punitive damages to deter or punish egregious violations of constitutional rights. Id. Therefore, while Doe's claims for compensatory damage are barred by § 1997e(e), his claims for nominal damages survive. Moreover, to the extent that Doe's punitive damages claims stem solely from the violations of his right to medical privacy, and not from any emotional or mental distress suffered, those claims are not barred by § 1997e(e). See id. at 252.

.Notwithstanding the fact that the Supreme Court has twice stated in mandatory, unqualified language that "[a] court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at *315 all ...” Wilson, 526 U.S. at 609, 119 S.Ct. 1692 quoting Conn v. Gabbert, 526 U.S. at 290, 119 S.Ct. 1292 (internal quotations omitted) (emphasis added), Judge Garth's dissent would prefer that we skip the first prong of qualified immunity analysis. See Dissent, infra at p. 329. This practice ignores the Supreme Court's express language and creates an exception based on the procedural posture of the case. While there may be pragmatic considerations favoring Judge Garth’s qualification of the Supreme Court’s unqualified language, the Court has not yet suggested any basis for departing from the rule articulated in Wilson. Our threshold task here, in qualified immunity analysis, is to determine whether Doe has alleged a violation of a constitutional right. We hold that he has, although the full extent of that right in the prison setting has yet to be delineated. Whether and how prison officials must accommodate, or may curtail and even extinguish that right, in light of the penological interests concerned, is not before the Court today.

. The Fourth Amendment prohibits the government from conducting unreasonable searches and seizures. U.S. Const, amend. IV. While courts and commentators have emphasized the privacy interests protected by the Fourth Amendment, the Supreme Court has clarified that the Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all.” Katz v. United States, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
There are at least two types of privacy protected by the Fourteenth Amendment: the individual interest in avoiding disclosure of personal matters, and the right to autonomy and independence in personal decision-making. See Whalen, 429 U.S. at 599-600, 97 S.Ct. 869; Westinghouse, 638 F.2d at 577. Cases in the latter category describe the liberty interests in matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. See e.g. Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (parents' rights to make decisions concerning care and custody of children); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (right to abortion); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (freedom to marry); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right to marital privacy in use of contraceptives); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (parents' right to teach own children); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (right to teach foreign language). As described above, Doe’s privacy interest clearly falls into the first category. Some courts have referred to the first category as a "right to confidentiality,” to distinguish it from the right to autonomy and independence in personal decision making. E.g. Powell v. Schriver, 175 F.3d 107, 113-14 (2d Cir.1999).

. For example, state law may bear upon a claim under the Due Process clause when the property interest protected by the Fourteenth Amendment is created by state law. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Acierno v. Cloutier, 40 F.3d 597 (3d. Cir.1994). A federal statute can provide the clearly established right when it is the basis for the action. See, e.g. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (vindicating rights under Social Security Act). This case involves neither situation.

. By 1995, the Sixth Circuit had explicitly held that the right of privacy is not implicated at all by prison official's disclosure of an inmate's HIV status. See Doe v. Wigginton, 21 F.3d 733, 740 (6th Cir.1994). However, Sixth Circuit law conflicts with our circuit on this issue because the Sixth Circuit does not recognize the right to privacy in one's medical information in any setting. Compare J.P. v. DeSanti, 653 F.2d 1080 (6th Cir.1981) (no right to privacy in "social histories” and medical records) with United States v. Westinghouse Elec. Corp., 638 F.2d 570 (3d Cir.1980) (right to privacy in medical records).

. The appellate cases illustrate the problem identified by the Supreme Court in qualified immunity cases: "[T]he generally sound rule of avoiding determination of constitutional issues does not readily fit the situation presented here [because] when liability is claimed on the basis of a constitutional violation, even a finding of qualified immunity requires some determination about the state of constitutional law at the time the officer acted. What is more significant is that if the policy of avoidance [of constitutional issues] were always followed in favor of ruling on qualified immunity whenever there was no clearly settled constitutional rule of primary conduct, standards of official conduct would tend to remain uncertain, to the detriment both of officials and individuals. An immunity determination, with nothing more, provides no clear standard, constitutional or non-constitutional .... therefore the better approach is to determine the right before determining whether it was previously established with clarity.” County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). See also Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

. These opinions also conflict with other New York district court cases which upheld the segregation of HIV-positive inmates. See Baez v. Rapping, 680 F.Supp. 112 (S.D.N.Y.1988); Cordero v. Coughlin, 607 F.Supp. 9 (S.D.N.Y.1984).

. See Hayes v. Long, 72 F.3d 70, 73-74 (8th Cir.1995) (looking to all decisional law, including Supreme Court, circuit courts, district courts, and state court opinions for clearly established rights); Tribble v. Gardner, 860 F.2d 321, 324 (9th Cir.1988)(same). We note that the Fourth, Tenth and Eleventh Circuits do not look to district court decisions to determine if rights are clearly established. See, e.g., Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584, 594 (10th Cir.1999) (considering only Supreme Court, forum circuit, highest state court, or clearly established weight of authority from other circuit courts); Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir.1999) (considering only Supreme Court, forum circuit and highest state court); Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n. 4 (11th Cir.) cert. denied, Jenkins ex rel. Hall v. Herring, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997)(same). The Second and Seventh Circuits consider district court opinions as evidence of the law but hold that they cannot clearly establish the law of the circuit. Anderson, 72 F.3d at 525; Jermosen v. Smith, 945 F.2d 547, 551 (2d Cir.1991). The Sixth Circuit has held that a district court must find binding precedent from the Supreme Court, the Sixth Circuit, or from itself. Ohio Civil Serv. Employees Ass’n v. Seiter, 858 F.2d 1171, 1177 (6th Cir.1988).
We have held that district court decisions do not establish the law of the circuit, and are not even binding on other district courts within the district. Threadgill v. Armstrong World Indus., Inc., 928 F.2d 1366, 1371 (3d Cir.1991). Yet, as our prior decisions have illustrated, district court opinions do play a role in the qualified immunity analysis. See e.g. Pro v. Donatucci, 81 F.3d 1283 (3d Cir.1996) (affirming district court's reliance on Fifth Circuit opinion and two district court opinions to find clearly established right in qualified immunity analysis); cf. Brown v. Grabowski, 922 F.2d 1097 n. 13 (3d Cir.1990) (accepting the use of out of circuit and district court opinions in qualified immunity analysis but reversing because opinions had been render ed after conduct in question).

. The absence of circuit precedent does not mean an official will always retain the immunity defense. "The easiest cases don’t even arise.” United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (citations and internal quotation marks omitted).

. The Austin court stated: “One group of inmates objects to the Settlement Agreement because they believe the provisions which ensure the anonymity of HIV-infected inmates ar e too stringent. These inmates want the DOC to test all inmates and notify the general population of those inmates who are HIV-positive. Such a notification procedure is unrelated to any penological interest and would most likely violate state law ... and the Constitution of the United States.” Austin, 876 F.Supp. at 1466. With respect to the Turner factors, however, the Austin court stated that “there was no assurance that this Court would order an elimination of the notification provision. Although individuals have an interest in preventing disclosure of their HIV status which is protected by state law and the Constitution, inmates' rights must necessarily yield to a certain extent to legitimate penological interests.” Id. at 1467.

. We will likewise affirm the District Court's order dismissing Nurse Zimmerman pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for qualified immunity and declining supplemental jurisdiction over the state claims.